**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | |
|---|---|
| LASHAWNDA RUSSELL and )<br>W.M., a minor, by and )<br>through his mother, )<br>Lashawnda Russell, )<br>　　　　　　　　　　　　)<br>　　　Plaintiffs, )<br>　　　　　　　　　　　　)<br>　　　v. )<br>　　　　　　　　　　　　)<br>LUCIO RAMIREZ-ROQUE and )<br>EL PASO FREIGHT SERVICES, )<br>INC., )<br>　　　　　　　　　　　　)<br>　　　Defendants. ) | CIVIL ACTION NO.<br>2:20cv150-MHT<br>(WO) |

**OPINION**

Plaintiffs Lashawnda Russell and W.M., her minor son, brought this lawsuit for injuries sustained in a motor-vehicle accident. They name as defendants Lucio Ramirez-Roque, the driver of the commercial vehicle involved in the accident, and El Paso Freight Services, Inc., the owner of the commercial vehicle and Ramirez-Roque's employer. Plaintiffs assert state claims against both defendants for negligence and wantonness, and state claims against El Paso for negligent and wanton

entrustment, and negligent and wanton hiring, training, supervision, and retention.  El Paso properly removed this action from state court to this federal court based on diversity-of-citizenship jurisdiction.  *See* 28 U.S.C. §§ 1332 (diversity), 1441(b) (removal).[1]

The parties have now reached a settlement of the case.  Because W.M. is 17 years old and thus a minor, the parties have asked the court to approve their proposed settlement.  At the pro ami hearing on November 23, 2020, the court heard from both Russell and W.M.; W.M.'s court-appointed guardian ad litem; and counsel for the

---

1. As discussed below, plaintiffs Russell and W.M. ultimately settled their claims for less than $ 75,000.00.  This has no bearing on whether diversity jurisdiction's amount-in-controversy requirement is satisfied.  "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).  In its notice of removal, El Paso made a good-faith allegation that the amount in controversy in this case exceeds $ 75,000.00 (exclusive of interests and costs), which the plaintiffs did not challenge and which the court is independently convinced is a reasonable inference from the facts alleged.  Accordingly, removal jurisdiction based on diversity of citizenship is proper under 28 U.S.C. § 1332.

parties.² For the reasons described below, the court will approve the settlement.³

## I. BACKGROUND

On February 5, 2018, Russell and W.M. were traveling north on Interstate-65 in Montgomery, Alabama, between West Edgemont Avenue and West Fairview Avenue, when Russell's 2004 Cadillac DeVille was struck from behind by a tractor-trailer operated by Ramirez-Roque, as part of his employment with El Paso. W.M. suffered upper back and elbow pain and received medical treatment over the next eight weeks. He has made a full recovery.

The parties have proposed to the court a settlement of $ 15,000.00 to resolve all of W.M.'s claims and

---

2. Because W.M. is almost an adult, the court believed it was appropriate to solicit his views on the fairness of the proposed settlement.

3. Because the court did not discover that W.M. was a minor until the parties presented their proposed settlement, the case had to be recaptioned, some documents redacted and others sealed, all to protect W.M.'s identity and in accordance with Local Rule 5.2(a)(2) of the United States District Court for the Middle District of Alabama.

damages arising out, or relating to, this accident.[4] Out of the settlement amount, $ 4,511.87 is to be paid to W.M.'s medical providers for outstanding bills and liens for treatment rendered. The remainder of the settlement funds are to be divided between W.M. and his attorney. W.M.'s fee agreement with his attorney provides for a 40 % contingency fee, calculated before subtraction of the medical bills. This would result in the attorney receiving a larger cash disbursement from the settlement than W.M would. However, the guardian ad litem has recommended that the court reduce the attorney's fee so that the attorney does not take home a larger cash disbursement than the minor plaintiff. The settlement also provides for the dismissal of this lawsuit with prejudice.

---

4. The parties have also settled Russell's individual claim for the sum of $ 36,000.00. However, because Russell is not a minor, her settlement need not be approved by the court.

## II.  LEGAL STANDARD

Russell and W.M's claims against defendants are state claims; therefore, Alabama substantive law governs their claims.  *See K.J. v. CTW Transportation Servs., Inc.*, No. 2:18cv19-MHT, 2018 WL 3656305, at \*1 (M.D. Ala. Aug. 2, 2018) (Thompson, J.) ("[Alabama's state law requiring a fairness hearing for settling the claims of a minor plaintiff] is a rule of substantive law, which must be applied by federal courts sitting in diversity.") (citing *Burke v. Smith*, 252 F.3d 1260, 1266 (11th Cir. 2001)).

"Alabama law requires that a court hold a fairness hearing before a minor plaintiff's case may be settled."  *Casey v. Gartland*, No. 2:18cvV890-MHT, 2020 WL 4470444, at \*1 (M.D. Ala. Aug. 4, 2020) (Thompson, J.) (citing *Large v. Hayes by and through Nesbitt*, 534 So. 2d 1101, 1105 (Ala. 1988)) (further citations omitted). This hearing must involve "an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor."  *Id.,* 2020 WL 4470444, at

5

\*1 (citing *Large*, 534 So. 2d at 1105) (internal citation omitted); *see also* William E. Shreve, Jr., *Settling the Claims of a Minor*, 72 Ala. Law 308 (2011).  "Because a minor ordinarily cannot be bound by a settlement agreement, a fairness hearing and approval of the settlement are required in order for the settlement to be 'valid and binding' and to 'bar [] a subsequent action [by the minor] to recover for the same injuries.'" *Casey*, 2020 WL 4470444, at \*1 (citing Shreve, *Settling the Claims of a Minor*, *supra*, at 310) (internal citation omitted).

Finally, Fed. R. Civ. P. 17(c)(2) requires the appointment of a guardian ad litem for a minor plaintiff in a case such as this, but does not prescribe any framework for evaluating a settlement of the minor's claim.  *Id.*, 2020 WL 4470444, at \*1, n.2.

### III. APPROVAL OF THE SETTLEMENT

Having reviewed the pleadings in this case and the report of the guardian ad litem, and having heard

6

detailed testimony and argument at the pro ami hearing, the court finds that the terms and conditions of the proposed settlement are in the best interest of W.M. and are fair, just, and reasonable under the circumstances, with one exception.  However, in light of the recommendation of the guardian ad litem and after an independent assessment of the circumstances, the court will adjust the amount of attorneys' fees from a 40 % contingency ($ 6,000) to 34.9 % ($ 5,244.06).  The net amount to be disbursed to W.M. is therefore increased from $ 4,488.13 to $ 5,244.07.  The remaining $ 4,511.87 will be applied to W.M's medical expenses, per the terms of the proposed settlement.

First, the decision to settle is logical.  While the defendants' liability does not appear to be in dispute, there is certainly no guarantee that a jury would render a verdict awarding W.M. an amount greater than $ 15,000.00.  Moreover, even if the jury might award an amount greater than the settlement amount, the labor-intensive litigation of the various issues involved

7

in this case could substantially impact the net recovery to W.M.  Proceeding to trial would cause plaintiffs' counsel, and thus W.M., to continue accruing expenses in the form of administrative fees to facilitate the service of Ramirez-Roque pursuant to the Hague Convention; deposition fees and transcript costs for any fact witnesses; potential travel fees and costs associated with plaintiffs' counsel deposing defendants (both of whom are located out of state); and fees for the depositions of W.M.'s treating physicians.  Therefore, the court finds that the decision to settle this case prior to the parties engaging in extensive discovery, and certainly a jury trial, is reasonable.

Second, the court finds that settlement amount of $ 15,000.00 to be reasonable in this case.  The day after the accident, and again a couple days later, Russell took W.M. to Montgomery Wellness and Injury, where he complained of upper back and elbow pain.  Then, after a couple more days, W.M. presented at Baptist Medical Center South, again complaining of back and elbow pain.

He underwent x-rays of his back and elbow, which did not reveal any fractures or dislocation or any evidence of joint effusion.  Later that same month, he presented at Harmony Wellness & Rehab.  He underwent an MRI and six physical therapy visits.  The MRI revealed no acute injury or other injury to his intervertebral discs.  He has recovered fully and has no long-term or residual effects from his injuries sustained in the accident.

W.M. did not maintain health insurance at the time of the accident and has the following outstanding bills/liens:

| | |
|---|---:|
| Baptist Health | $ 1,493.95 |
| Emergency Services of Montgomery | 1,176.00 |
| Merchants Adjustment Service | 73.78 |
| Montgomery Wellness & Injury | 855.00 |
| TriMed Billing Solutions[5] | 7,260.43 |
| TOTAL | $ 10,859.16 |

Plaintiffs' counsel has negotiated with some of W.M.'s medical providers to accept lower amounts in

---

5. TriMed is a third-party entity that provides medical billing services.

satisfaction of their subrogation claims or liens. Baptist Health has agreed to accept $ 971.06 (a 35 % reduction) in satisfaction of its hospital lien, Merchants Adjustment Service has agreed to accept $ 73.88 (a 35 % reduction), and TriMed Billing Solutions has agreed to accept $ 1,436.43 (nearly an 80% reduction). Thus, the total bills to be repaid from W.M.'s settlement are $ 4,511.87, with W.M. receiving the benefit of these providers accepting a total of $ 6,386.39 less than the "retail" amounts owed.

At the hearing, the court heard testimony from W.M. and Russell that they understand that the remaining proceeds are to be used solely for the benefit of W.M.

Therefore, in light of the injuries sustained by W.M.; the length of time that he received medical treatment; his full recovery; and his having all liens and subrogation claims satisfied for far less than the full amount owed, the court finds that the $ 15,000.00 settlement is fair and reasonable.

Third, the court will address plaintiffs' counsel's fee. The governing fee agreement provides for a 40 % contingency fee, which plaintiffs' counsel requests that the court approve. Under the contingency-fee agreement, plaintiffs' counsel would receive $ 6,000.00, with W.M. receiving a net recovery of $ 4,135.47.[6]

The guardian ad litem acknowledges that a 40 % contingency fee is reasonable and customary in this locality for a lawsuit involving a tractor-trailer accident. However, in light of the settlement amount and W.M.'s status as a minor, the guardian ad litem recommends that plaintiffs' counsel's fee be reduced so that W.M.'s net recovery is greater than or equal to his attorneys' fees. In light of this recommendation, the court will reduce W.M.'s attorneys' fees to 34.9 %, resulting in plaintiffs' counsel and W.M. receiving approximately equal amounts.

---

6. Plaintiffs' counsel apportioned all of the litigation expenses his firm advanced to plaintiffs to Russell's settlement. As such, reimbursement for expenses is not at issue in this settlement.

11

To decide whether attorney's fees are reasonable, the court must determine the "lodestar" figure, "that is the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rates performed by similarly-situated attorneys in the community." *Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1161 (M.D. Ala. 2007) (Thompson, J.) (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). "The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1162 (quoting *Norman*, 836 F.3d at 1303). In determining the loadstar, the court applies the 12-factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)[7] (abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)), and then proceeds to analyze whether any portion of this fee

---

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

12

should be adjusted upwards or downwards. *Simpleville Music*, 511 F. Supp. 2d at 1161 (citing *Johnson*, 488 F.2d at 717-19).[8]

Plaintiffs' counsel calculated the lodestar here to be approximately $ 6,490.00, based on his working 13.3 hours at a rate of $ 400.00 per hour, and paralegal time of 5.8 hours at a rate of $ 200.00 per hour.

It cannot, however, be ignored that W.M. is a minor. Charging a 40 % contingency fee, plaintiffs' counsel stands to recover $ 6,000 in attorneys' fees, while W.M.--not including medical costs--would recover only $4,488.13.

---

8. These 12 *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the processional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

At the pro ami hearing, the guardian ad litem explained that it is common practice among Alabama personal injury lawyers to reduce attorneys' fees in cases regarding a minor plaintiff to less than or equal to that of the minor plaintiff's net recovery, not including medical expenses, in a settlement agreement. Even when (as here) attorneys for a minor plaintiff charge a reasonable fee vis-à-vis the time, effort, and skill put into their representation, the optics of an attorney walking away from a settlement with more money than a minor plaintiff are poor. Because minor plaintiffs are uniquely and vulnerably situated, adjusting attorneys' fees in this way reinforces public confidence in the legal profession, in the trustworthiness of the attorney, and in the ability of the courts to do justice equitably.

For these reasons, the court will accept the guardian ad litem's recommendation and reduce the amount of recoverable attorneys' fees from 40 % to 34.9 %,

reflecting a dollar amount of $ 5,244.06, leaving a net recovery for W.M. of $ 5,244.07.[9]

Finally, the court finds that guardian ad litem's recommendation concerning the holding and eventual disbursement of the proceeds to be in the best interest of the minor. The parties acknowledge that the amount of W.M.'s net recovery does not warrant the expense of establishing a conservatorship or purchasing an elaborate investment product, such as an annuity. The guardian litem proposes that plaintiffs' counsel hold W.M.'s proceeds in his trust account until May 24, 2021--W.M.'s 18th birthday--or that plaintiffs' counsel purchase a certificate of deposit that matures on W.M.'s 18th birthday. W.M. and Russell testified that W.M. wishes to use the settlement funds to purchase a used car immediately, even though he does not have a driver's

---

9. The court reached these figures by subtracting the medical costs ($ 4,511.87) from the total $ 15,000 of the settlement, and dividing the remaining $ 10,488.13 equally between W.M. and his attorney, for a total of $ 5,244.06 each. Since $ 10,488.13 is an odd number and cannot be evenly divided by two, one penny was left over, which the court apportioned to W.M. as the minor plaintiff.

15

license, and he has access to his mother's car.  The guardian ad litem opposes this.

The court accepts the guardian ad litem's recommendation, and W.M. and his mother may collect the settlement on a date no sooner than May 24, 2021.

Finally, the guardian ad litem, W.M.'s mother, and W.M. agree that the settlement amount is in W.M.'s best interest.[10]

In sum, the court finds the settlement is fair, just, and reasonable, and in the best interest of the minor plaintiff W.M., with the modification of attorneys' fees described above.  The court will therefore approve the settlement with the modification of attorneys' fees from 40 % in the proposed agreement to 34.9 % (totaling $ 5,244.06).

---

10. Because plaintiffs' counsel represented that Russell's settlement and W.M.'s settlement were negotiated and resolved completely separately, the court is not confronted with a "sum zero" conflict in the plaintiffs' counsel representation of both plaintiffs--that is, "one plaintiff's gain could be another plaintiff's loss." *Johnson v. United States*, No. 1:14cv220-MHT, 2016 WL 482034, at *2 (M.D. Ala. 2016) (Thompson, J.)

An appropriate judgment will be entered.

DONE, this the 30th day of November, 2020.

                              /s/ Myron H. Thompson
                            **UNITED STATES DISTRICT JUDGE**